UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

THOMAS LAWSON,

    Plaintiff,

vs.

CASE NO.: 8:04-cv-2366

DOLLAR GENERAL CORPORATION
AND DOLGENCORP, INC.

    Defendants.

## DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

Defendants DOLGENCORP, INC. and DOLLAR GENERAL CORPORATION (hereinafter collectively referenced as "Defendants" or "Dollar General"), by and through their undersigned counsel, pursuant to Fed. R. Civ. P. 56 and M.D. Fla. Local Rule 3.01, hereby file this Memorandum of Law in Support of Defendants' Motion for Summary Judgment, as to all claims asserted by Plaintiff THOMAS LAWSON ("Plaintiff" or "Lawson"), and state as follows:

### I. PROCEDURAL BACKGROUND[1]

Plaintiff's Complaint, filed in the Circuit Court for the Sixth Judicial Circuit In and for Pinellas County, Florida, was served on Dollar General on or around October 4, 2004. In his Complaint, Plaintiff alleges Dollar General violated Florida's Whistleblower Act, Section 448.101, et seq., Fla. Stat. ("the Whistleblower Act") when it terminated Plaintiff's employment.

---

[1]Throughout this Memorandum of Law, "SOF ¶__" will reference Defendants' Statement of Material Facts In Support of Defendants' Motion for Summary Judgment and Memorandum of Law in Support, including referenced exhibits, which is incorporated herein and is being filed concurrently with Defendants' Motion for Summary Judgment and Memorandum of Law in Support.

(Complaint ¶¶9-24). Dollar General timely removed this action on the basis of diversity jurisdiction and answered Plaintiff's Complaint, denying all of Plaintiff's claims. Subsequently, Plaintiff filed a Charge of Discrimination ("Charge") with the Equal Employment Opportunity Commission alleging retaliation in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §2000e, et seq. ("Title VII"). With leave of Court, Plaintiff amended his Complaint to include claims for retaliation pursuant to Title VII and the Florida Civil Rights Act, Chapter 760, Fla. Stat. ("FCRA") in addition to his claim under the Whistleblower Act. (Amended Complaint).[2] Dollar General timely answered Plaintiff's Amended Complaint, denying all of Plaintiff's claims. (Answer to Amended Complaint). Discovery concluded on October 25, 2005.

## II. PLAINTIFF'S CLAIMS

In Counts I, II, and III of his Amended Complaint, Plaintiff claims he was terminated in violation of the Whistleblower Act, in violation of Title VII, and in violation of the FCRA. (Amended Complaint ¶¶22-39). Plaintiff's claims for retaliation in violation of the Whistleblower Act, Title VII, and the FCRA are based on his August 2, 2004, termination for violation of Dollar General's policy that requires maintaining the confidentiality of investigations. (SOF ¶¶3, 5). Significantly, Plaintiff revealed confidential information regarding an investigation to his peers, who were not involved in the investigation, and had no business need to know about the investigation, contrary to both Dollar General policy and instruction not to do so. (SOF ¶¶101-113). Plaintiff's purported "statutorily protected activity" is his June 2004 complaint to Dollar General that Kathleen Guion, a high-ranking Dollar General executive, had allegedly engaged in inappropriate behavior towards <u>other</u> Dollar General employees. (SOF

---

[2] By addressing Plaintiff's FCRA and Title VII claims in their Motion for Summary Judgment, Defendants in no way concede that Plaintiff properly exhausted his administrative remedies under either statute.

¶¶70-80). Plaintiff's complaint occurred approximately six months <u>after</u> the alleged conduct and immediately after Plaintiff was investigated for an inappropriate living arrangement with a subordinate employee, who ironically was also involved in the complaint regarding Ms. Guion. (SOF ¶¶52, 53, 56, 67, 70). Because Plaintiff cannot establish *prima facie* claims of retaliation or that Dollar General's legitimate nondiscriminatory reasons for his discharge were pretext for retaliation, summary judgment in favor of Dollar General is appropriate as a matter of law.

## III. ARGUMENT

Plaintiff's claims of retaliation are without merit because (a) Plaintiff did not engage in protected activity; (b) Plaintiff's alleged protected activity was not causally connected to his termination; and (c) Plaintiff was terminated for legitimate nonretaliatory reasons unrelated to his complaint of alleged sexual harassment, namely discussing a confidential investigation contrary to company policy. Therefore, summary judgment in favor of Dollar General is appropriate as a matter of law.

### A. Summary Judgment Standard

Rule 56(c) of the Federal Rules of Civil Procedure provides summary judgment is warranted if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. See <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 322 (1986). Summary judgment for defendants is appropriate in employment cases. See <u>Earley v. Champion International Corp.</u>, 907 F.2d 1077, 1081 (11th Cir. 1990)(and cases cited therein). The purpose of Rule 56 is to eliminate the needless delay and expense to the court and the parties occasioned by an unnecessary trial. See <u>Johnston v. Henderson</u>, 144 F. Supp. 2d

1341, 1348 (S.D. Fla. 2001), citing Celotex Corp., 477 U.S. at 322-323.[3] In the instant case, Plaintiff has failed to disclose any evidence sufficient to overcome his burden on all of his claims.

> B. Summary Judgment In Favor Of Dollar General Is Appropriate As To All Of Plaintiff's Claims.

Title VII, the FCRA, and the Whistleblower Act all prohibit retaliatory personnel action against an employee for engaging in statutorily protected activity. Although the burden-shifting scheme used to analyze Title VII and FCRA claims is also used to analyze claims under the Whistleblower Act, the analysis of the *prima facie* case for each claim is slightly different.[4] Plaintiff cannot establish a *prima facie* case for any of his claims. Even if he could establish a *prima facie* case, however, he cannot establish the reason for his discharge was pretextual.

---

[3] Rule 56(c) "mandates the entry of summary judgment . . . against the party who fails to make a showing sufficient to establish the existence of an element essential to the party's case, and on which the party will bear the burden of proof at trial." Id. at 1349. Further, although the court must consider the evidence in a light most favorable to the non-moving party, the non-moving party cannot rest upon bare assertions, conclusory allegations, surmise, or conjecture, but, instead must produce concrete evidence in the form of specific facts on which the jury could reasonably find for the non-movant. See Johnston, 144 F. Supp. 2d at 1349, citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 251 (1986); Matsushita Electric Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586-587 (1986)). The existence of a mere scintilla of evidence is insufficient. See id.

Consideration of a summary judgment motion does not lessen the burdens on the non-moving party because the non-moving party bears the burden of coming forward with sufficient evidence on each element that must be proved. See Earley, 907 F.2d at 1080 (citations omitted). The failure of proof concerning an essential element of the non-moving party's case necessarily renders all other facts immaterial. See id. Thus, the moving party is entitled to judgment as a matter of law if the non-moving party has failed to make a sufficient showing on an essential element as to which he has the burden of proof. See id., citing Clotex, 477 U.S. at 322-323.

[4] Federal case law interpreting Title VII is applicable to retaliation cases arising under the FCRA, and Florida courts have held that decisions construing Title VII are applicable when analyzing claims under the FCRA because the Florida statute was patterned after Title VII. See Harper v. Blockbuster Entertainment Corp., 139 F.3d 1385, 1387, 1389-1390 (11th Cir. 1998); Florida State University v. Sondel, 685 So. 2d 923, 925 n.1 (Fla. 1st DCA 1996). Therefore, Defendants will analyze these claims together for the purposes of their Motion for Summary Judgment, and any reference to Title VII should be construed as a simultaneous reference to Plaintiff's FCRA claims.

1. **Plaintiff's Retaliation Claims Under Title VII And The FCRA Fail As A Matter Of Law.**

In Counts II and III of his Amended Complaint, Plaintiff claims his termination on or about August 2, 2004, violated the retaliation provisions of Title VII and the FCRA, under which it is unlawful for an employer to discriminate against an employee because he has opposed any practice made unlawful by Title VII, or "because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter." Little v. United Technologies, 103 F.3d 956, 959 (11th Cir. 1997), quoting 42 U.S.C. §2000e-3(a).[5] Absent direct evidence,[6] in order to prove a claim for retaliation, a plaintiff must create a presumption of intentional discrimination under McDonnell Douglas. See Chambers v. Walt Disney World Co., 132 F. Supp. 2d 1356, 1368 (M.D. Fla. 2001). Accordingly, a plaintiff must establish a *prima facie* case of retaliation by demonstrating that (1) he engaged in statutorily protected activity; (2) he suffered an adverse employment action; and (3) there is a causal connection between the adverse action and the protected activity. See id. If the plaintiff establishes a *prima facie* case, the burden shifts to the defendant to produce legitimate, nonretaliatory reasons for the adverse action to rebut the presumption of retaliation. See id. at 1369. If the defendant satisfies its burden, the burden then shifts to the plaintiff to establish pretext. See id. at 1369. For purposes of this Motion only, Dollar General acknowledges that

---

[5] Plaintiff's claims stem only from his alleged "opposition" to a practice made unlawful by Title VII. The "participation clause" of Title VII's anti-retaliation provision, which protects an employee if she "has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter" is not implicated in this case, as Plaintiff did not file a charge with the EEOC until after he had filed this lawsuit, so Defendants will not address that type of claim See Anduze v. Florida Atlantic University, 2005 U.S. App. LEXIS 21255 at *4-*5 (11th Cir. September 29, 2005), citing 42 U.S.C. §2000e-3(a), EEOC v. Total System Services, Inc., 221 F.3d 1171, 1174 (11th Cir. 2000).

[6] Direct evidence is evidence that, if believed, "proves the existence of a fact in issue without inference or presumption" and is comprised only of the most blatant remarks, whose intent could be nothing but to discriminate on the basis of some impermissible factor. Rojas v. Florida, 285 F.3d 1339, 1342 n.2 (11th Cir. 2002). In the present case, there is no direct evidence.

Plaintiff suffered an adverse employment action, as Plaintiff's employment was terminated. Because Plaintiff cannot establish that he engaged in protected activity, or the existence of a causal connection between his protected activity and his termination, however, his claims fail as a matter of law.

> a. **Plaintiff Cannot Establish A *Prima Facie* Case of Retaliation Because He Cannot Establish He Engaged In Statutorily Protected Activity.**

A person engages in "statutorily protected activity" under Title VII so long as he or she demonstrates a "good faith reasonable belief" that the employer engaged in an unlawful employment practice. Harper, 139 F.3d at 1388, citing Little, 103 F.3d at 960. It is insufficient, however, for an employee to allege that his belief in this regard simply was "honest and bona fide." Harper, 139 F.3d at 1388, citing Little, 103 F.3d at 960. Instead, plaintiff's burden under this standard has both a subjective and an objective component. See Little, 103 F.3d at 960. Thus, an employee must show that: (1) he *subjectively* (in good faith) believed his employer was engaged in unlawful employment practices; and (2) his belief, though perhaps mistaken, was *objectively* reasonable in light of the facts and record presented. See id. To satisfy this burden, therefore, the facts must support the employee's actual belief his or her employer had engaged in an unlawful employment practice (subjective component) and the "existing substantive law" must support the employee's belief that the employer engaged in an unlawful employment practice (objective component). Tatt v. Atlanta Gas Light Co., 138 Fed. Appx. 145, 147-148 (11th Cir. 2005), citing Clover v. Total Sys. Servs., Inc., 176 F.3d 1346, 1351 (11th Cir. 1999).

In the context of alleged retaliation based on a complaint of alleged sexual harassment, the subjective component is analyzed largely based on the employee's testimony regarding the specific events surrounding the protected activity. See Tatt, 148 Fed. Appx. at 148. To satisfy

6

Orlando 71956.1

the objective component in the context of a retaliation claim based on a report of sexual harassment, the complained-of conduct need not rise to the level of actionable sexual harassment. See id. However, the conduct must come close enough to that standard to support an objectively reasonable belief that it is actionable. See id. To constitute actionable sexual harassment, the alleged conduct must be so objectively offensive that it alters the "conditions" of the victim's employment. See id. at 147-148, citing Oncale v. Sundowner Offshore Servs., Inc., 523 U.S. 75, 118 S. Ct. 998, 1003 (1998). Therefore, an employee must show, among other things, that the alleged harassment occurred because of sex and that the conduct was severe or pervasive enough that a reasonable person would find it offensive. See id. at 148. To determine whether the conduct is sufficiently severe and pervasive, the relevant factors are (1) the frequency of the conduct; (2) the severity of the conduct; (3) whether the conduct is physically threatening or humiliating, or a mere offensive utterance; and (4) whether the conduct unreasonably interferes with an employee's job performance. See id., citing Mendoza v. Borden, Inc., 195 F.3d 1238, 1246 (11th Cir. 1999)(and cases cited therein). See also Speedway SuperAmerica, LLC v. Dupont, 2005 Fla. App. LEXIS 10129 at *13-*14 (Fla. 5th DCA July 1, 2005)(finding alleged conduct which involved multiple incidents of physical contact over a period of weeks, including rubbing against the employee and a smack on the buttocks, and numerous inappropriate comments, including comments regarding the employee's looks, did not rise to the level of sexual harassment).

In Tatt, the court rejected the employee's retaliation claim based on subjective and objective factors and found that she failed to establish (1) a subjective, good faith belief or (2) an objectively reasonable belief that the alleged harasser's conduct constituted sexual harassment under the law of the Eleventh Circuit because she did not believe the alleged harasser's

comments were sexual in nature; she did not believe she was targeted because of her sex; and she did not argue that the alleged conduct was physically threatening or humiliating or unreasonably interfered with her job performance. Id. at 148-149. The court also noted that the plaintiff's allegation that she believed the conduct was "severe" was undermined by the fact that she failed to report it until she received an adverse employment evaluation. See id. at 149.[7]

In the present case, the evidence clearly demonstrates that Plaintiff did not have a subjective (or good faith) belief that sexual harassment had occurred. See Tatt, 138 Fed. Appx. at 148-149; Harper, 139 F.3d at 1388; Little, 103 F.3d at 960. Consequently, Plaintiff's complaint of alleged harassment was not made in good faith and was not "protected activity" under Title VII and the FCRA. His lack of a good faith belief is underscored because: (1) Plaintiff's report was based on behavior not directed towards him but three other store managers; (2) Plaintiff allegedly witnessed the conduct on the part of Ms. Guion against the three managers but failed -- for **six months** -- to immediately report such conduct consistent with his obligations as a District Manager under Dollar General's policies; (3) Plaintiff claims he had knowledge six months prior to his complaint that two of the managers found Ms. Guion's alleged conduct offensive; (4) Plaintiff reported as part of his complaint that Tonnya White suffered harassment at the hands of Ms. Guion, despite Ms. White informing Plaintiff that she did not find any behavior on the part of Ms. Guion offensive; (5) Plaintiff's complaint immediately followed Dollar General's investigation into Plaintiff's living arrangements with Will Eaton in violation of Dollar General's policies; (6) Plaintiff's complaint also incorporated alleged "harassment"

---

[7] See also Harper, 139 F.3d at 1388 (the reasonableness of the employees' belief that they engaged in protected activity by complaining about a grooming policy was "belied by the unanimity with which the courts have declared grooming policies like [the employer's] non-discriminatory."); Little, 103 F.3d at 960 (finding the employee's assertion that he reasonably believed an isolated racial comment violative of Title VII implausible, at

allegations with regard to Jerry Torlucci and Jon Rogers, based on their interview of Plaintiff in connection with his living arrangements; (7) Plaintiff came forward to complain regarding Ms. Guion's alleged conduct purportedly only at the urging of Will Eaton, who also was interviewed during the investigation regarding his living arrangements with Plaintiff; (8) Plaintiff had received, read, and received training on, and understood Dollar General's policies regarding harassment, discrimination, and retaliation, the reporting procedures to be used with regard to such issues, and had in the past reported other allegations utilizing the appropriate complaint avenues; (9) in or about February 2004, approximately two months after Ms. Guion's alleged conduct, Plaintiff certified, in writing, that he had read and understood Dollar General's Code of Conduct and Business Ethics and **at that time**, he had no ethical concerns about which he should make Dollar General aware, including any concerns regarding alleged sexual harassment at Dollar General; and (10) Plaintiff had solicited sexual encounters from individuals in public places on numerous occasions prior to Ms. Guion's visit and his report to Dollar General in June 2004, undermining any argument he attempts to make that such giving someone a "grandmotherly hug" or putting an arm around someone's shoulder could be considered offensive. (SOF ¶¶11, 67-97).

Moreover, Plaintiff cannot have formed an objectively reasonable belief that Ms. Guion's alleged conduct was based on sex, as required by Title VII and the FCRA. First, Plaintiff claims that Ms. Guion hugged both men and women. (SOF ¶81). Also, even if Plaintiff, Mr. Eaton, and Mr. Ponczkowski's allegations are true, which they are not, conduct that is based on whether

---

best, as he never voiced a concern to a supervisor or management-level employee and reported the comment for the first time in a team meeting held approximately eight months after the comment was made.).

someone is "ugly" or "attractive" is not "because of sex" as required to rise to the level of actionable sexual harassment. (SOF ¶80).

Additionally, Plaintiff cannot have formed a reasonably objective belief that Ms. Guion's conduct was sufficiently severe or pervasive to constitute harassment. See Mendoza, 195 F.3d at 1246; Speedway SuperAmerica, LLC, 2005 Fla. App. LEXIS 10129 at *11-*16; Tatt, 138 Fed. Appx. at 148. Clearly, Ms. Guion's alleged conduct was neither frequent, severe, physically threatening or humiliating, nor did it unreasonably interfere with any employee's job performance. (SOF ¶¶80-81, 84-90).[8] The store visits occurred over the course of one day only and the employees never had contact with Ms. Guion again; each store visit lasted, at the most, 30 to 45 minutes; Ms. Guion allegedly put her arm around Mr. Ponczkowski, Mr. Eaton, and Ms. White for a very short period of time (in at least one case, less than two minutes); and neither Mr. Ponczkowski, Mr. Eaton, nor Ms. White reported the allegedly offensive behavior to Dollar General or indicated at the time that such behavior made them feel uncomfortable. (SOF ¶¶70, 85-87, 88). In fact, Ms. White told Plaintiff before he reported the allegations to Dollar General that Ms. Guion did nothing to make her feel uncomfortable during the store visit. (SOF ¶¶87-88). Despite Ms. White's statements to Plaintiff, he proceeded to report that Ms. White was also a victim of inappropriate behavior on the part of Ms. Guion. (SOF ¶¶72-73). Ms. White's clear contradiction of Plaintiff's reported complaint to Dollar General undermines any suggestion that Plaintiff's complaint was in good faith. Therefore, Plaintiff did not have a "good

---

[8] Any hearsay evidence from Plaintiff that Mr. Ponczkowski's performance suffered due to this incident is negated by Mr. Ponczkowski's and Plaintiff's failure to report the purported basis for his performance issues to Dollar General at the time they occurred. (SOF ¶¶85, 91). See Tatt, 148 Fed. App. at 149.

faith reasonable belief" that Ms. Guion's alleged conduct violated Title VII or the FCRA, so his claims fail as a matter of law.[9]

### b. Even If Plaintiff Could Establish He Engaged In Protected Activity, Which He Cannot, He Cannot Establish The Requisite Causal Connection.

As discussed above, for the purposes of this Motion, Dollar General acknowledges that Plaintiff was terminated and, therefore, suffered an adverse employment action. Even if Plaintiff were to establish the second prong of a *prima facie* case, i.e. that he engaged in statutorily protected activity, he must also establish a causal link between his statutorily protected activity and his termination, which he cannot do. See Chambers, 132 F. Supp. 2d at 1368. Temporal proximity and the protected activity must be "very close" to establish the requisite causal connection absent other evidence of such a connection. See Higdon v. Jackson, 393 F.3d 1211, 1220 (11th Cir. 2004).[10] When an intervening cause between the protected activity and the adverse action exists, temporal proximity alone cannot establish a causal connection. See Gaston v. Home Depot USA, Inc., 129 F. Supp. 2d 1355, 1377 (S.D. Fla. 2001)(noting that intervening unprotected conduct such as violating employer rules or disrupting the workplace can erode any causal connection suggested by the temporal proximity of the protected conduct and the termination); Brungart v. BellSouth Telecomms., Inc., 231 F.3d 791, 798 (11th Cir. 2000). Here, Plaintiff reported the alleged December 2003 activity on or about June 1, 2004, and was terminated on August 2, 2004. (SOF ¶73). Plaintiff's own conduct provides the basis for not

---

[9] Plaintiff bases his retaliation claims only on his complaint to Dollar General in June 2004. (Amended Complaint). To the extent he attempts to argue that any other incident rises to the level of statutorily protected activity, this argument fails, as no other activity in which he engaged could remotely be construed to be in opposition to any practice made unlawful by Title VII or the FCRA.

[10] Citing Clark County School Dist. V. Breeden, 532 U.S. 268, 273 (2001)(citing with approval cases finding a three to fourth month delay between the protected activity and the adverse action were insufficient to establish a *prima facie* case of retaliation absent other evidence tending to show causation).

solely relying on the temporal proximity between his report and his termination. Specifically, Plaintiff admits revealed the confidential details of the investigation into the December 2003 activities to numerous peers at Dollar General who had no involvement in the investigation and no business need to know the information. (SOF ¶113). Notably, subsequent to his report of alleged sexual harassment and Dollar General's determination that his allegations could not be substantiated, Plaintiff won the Spring Fling sales contest in connection with which he received $5,000.00 award at the end of July 2004. (SOF ¶99). Had it been Dollar General's intention to terminate Plaintiff's employment because of his June 2004 report, it makes no sense that Plaintiff would be flown to Nashville to attend a company meeting and given a $5,000.00 award. Because there is no additional evidence to establish a causal connection, Plaintiff cannot establish a *prima facie* case of Title VII or FCRA retaliation as a matter of law.

   c. **Plaintiff Cannot Show That Dollar General's Legitimate Non-Retaliatory Reason For His Discharge—Breach Of Dollar General's Policy Regarding Confidentiality—Was Pretext For Retaliation.**

Even if Plaintiff could establish a *prima facie* case of retaliation under Title VII and the FCRA, which he cannot, his claims fail because he cannot point to any evidence that shows Dollar General's legitimate, nonretaliatory reason for his discharge. See Chambers, 132 F. Supp. 2d at 1365-1366. In order to prove that Dollar General's legitimate, non-retaliatory reason is not a pretext for retaliation, Plaintiff must prove that the reason "lacks credibility" or persuade the trier of fact that retaliation was "the more likely motive" behind the decision. Baldwin v. Bellsouth Advertising & Publishing Corp., 677 F. Supp. 1573, 1579 (M.D. Ga. 1988), citing Clark v. Huntsville City Bd. Of Education, 717 F.2d 525, 527 (11th Cir. 1983). Mere conclusory allegations will not suffice. See Earley, 907 F.2d at 1081; Gaston, 129 F. Supp. 2d at 1368

("Plaintiff's mere belief, speculation, or conclusory allegations that he was subject to [retaliation] will not create an inference of [retaliation] or satisfy his burden when responding to a properly supported motion for summary judgment.") Instead, to survive summary judgment, an employee must "present concrete evidence in the form of specific facts" showing the employer's stated reasons for the adverse employment action are a mere pretext. Earley, 907 F.3d at 1081. If a plaintiff fails to present sufficient evidence creating a genuine issue of material fact regarding whether the employer's reasons are pretextual, the employer is entitled to summary judgment. See Chambers, 132 F. Supp. 2d at 1366.

It is well-established that an employee may not establish pretext simply by questioning the wisdom of the employer's reason when that reason is one that might motivate a reasonable employer. See Chambers, 132 F. Supp. 2d at 1366, citing Combs v. Plantation Patterns Meadowcraft, Inc., 106 F.3d 1519 at 1543 (11th Cir. 1997). Under Eleventh Circuit Law,

> Title VII does not take away an employer's right to interpret its rules as it chooses, and to make determinations as it sees fit under those rules. . . . Title VII is not a shield against harsh treatment at the workplace. Nor does the statute require the employer to have good cause for its decisions.

Chambers, 132 F. Supp. 2d at 1366, quoting Nix v. WLCY Radio/Rahall Communications, 738 F.2d 1181, 1187 (11th Cir. 1984). Thus, although an employee might disagree with his employer's reasons for his termination, this cannot defeat an employer's motion for summary judgment, as it is well-established that courts do not sit as "superpersonnel departments" to second-guess an employer's decision to terminate an employee. See Damon v. Fleming Supermarkets of Florida, Inc., 196 F.3d 1354, 1361 (11th Cir. 1999)("[w]e are not in the business of adjudging whether employment decisions are prudent or fair. Instead, our sole concern is whether an unlawful [retaliatory] animus motivates a challenged employment decision."). In

13

Orlando 71956.1

addition, disruptive conduct by an employee, in some instances, falls outside the protection of Title VII's retaliation provision. See Rollins v. State of Florida Department of Law Enforcement, 868 F.2d 397, 400-401 (11th Cir. 1989).[11]

In the present case, Plaintiff cannot establish that Dollar General's legitimate, nonretaliatory reasons for his discharge, namely violating Dollar General's confidentiality policy relating to investigations, was pretext for discrimination. (SOF ¶110). First, Plaintiff did not report allegations on behalf of himself but on behalf of others. (SOF ¶73). Further, his complaint occurred almost six months after the alleged incident and only after he and one of the other complainants, Will Eaton, had been investigated for a separate violation of Dollar General's policy. (SOF ¶¶52-53, 56). In addition, Plaintiff acknowledges he had received and understood Dollar General's policies regarding alleged sexual harassment and his obligations regarding the reporting of such incidents, yet he failed to report such allegations until nearly six months after he allegedly witnessed the incident and had knowledge that two employees were offended. (SOF ¶¶3, 6, 8, 73). Moreover, the two so-called offended employees were Store Managers who knew full-well, Dollar General's policies and yet they, too, failed to report the allegations. (SOF ¶3, 74-78, 81).

---

[11]citing Whatley v. Metropolitan Atlanta Rapid Transit Authority, 632 F.2d 1325, 1329 (5th Cir. Unit B 1980)(failure to follow established reporting procedures constituted a legitimate reason for discharge and was not "protected activity"); Hochstadt v. Worcester Foundation for Experimental Biology, 545 F.2d 222, 230-231 (1st Cir. 1976)(noting, in part, that "an employer remains entitled to loyalty and cooperativeness from employees" and also that "[a]llowing an employee to invoke the protection of section 704(a) for conduct aimed at achieving purely ulterior objectives, or for conduct aimed at achieving even proper objectives through the use of improper means, could have an effect directly contrary to Congress' goal, by discouraging employers from hiring persons whom the Act is designed to protect"). Regardless of whether this factor is utilized to analyze whether the activity is statutorily protected or whether the employer's reason for discharge is pretextual, courts do view an employee's disruptive behavior as inconsistent with what should be protected under Title VII. See Rollins, 868 F.2d 397 (finding the conduct fell outside the protection of the statute); Harris v. ECP Healthcare, P.C., 954 F. Supp. 1295, 1304-1306 (S.D. Ind. 1997)(disruptive, crude, and insubordinate nature of plaintiff's conduct removed conduct from statutorily protected conduct; considering such conduct in pretext analysis as well; and noting that Title VII's anti-retaliation

Also, Plaintiff won the Spring Fling Sales Contest in connection with which he received a $5,000.00 award, several weeks **after** the investigation regarding Ms. Guion had concluded, which is certainly not indicative of Dollar General's intent to take an adverse action because he engaged in protected activity. (SOF ¶99). In addition, Plaintiff's termination resulted from the complaints of Plaintiff's peers to Mr. Wall and Mr. Wall's subsequent report of such complaints to Dollar General. (SOF ¶¶101-104). Significantly, Mr. Wall considered Plaintiff a friend. (SOF ¶103). He also viewed Plaintiff as one of his strongest managers in many respects. (SOF ¶103). Therefore, it was extremely difficult for Mr. Wall to report Plaintiff's violation of Dollar General policy knowing that Plaintiff's actions would be grounds for Plaintiff's termination for violation of Dollar General Policy. (SOF ¶103).

In addition, not only did Plaintiff's discussion of the investigation violate Dollar General policy, it was also disruptive. Plaintiff's conversations regarding the investigation did not involve individuals associated with the investigation or who otherwise needed to know the information. (SOF ¶106). Spreading unsubstantiated allegations regarding any employee could harm his or her reputation, and spreading such allegations regarding a high-level company official within Plaintiff's organization (i.e. the Operations Group) obviously could have impaired her ability to lead.

In any event, however, Plaintiff does not deny that he discussed the investigation with his peers. (SOF ¶113). Based on his actions, and Dollar General's policies regarding the confidentiality of investigations, Velda Krancer and Jeff Rice made the decision to terminate Plaintiff's employment. (SOF ¶108). Ms. Guion was not involved in the decision. (SOF ¶108).

---

provisions do not immunize employees from disciplinary termination for violations of company policy, *regardless of whether the violations were committed in response to perceived discrimination.*)

Regardless of whether Plaintiff understood Dollar General's policies regarding the confidentiality of investigations, whether he acknowledges that Jeff Rice reminded him of these policies, or whether he disagrees with Dollar General's decision to terminate his employment, the only question with regard to pretext is whether Dollar General's actions were based upon nonretaliatory reasons. See Damon, 196 F.3d at 1361. Dollar General based Plaintiff's termination on its reasonable view that Plaintiff violated clear Dollar General policy. (SOF ¶108). Plaintiff's view that he was terminated unlawfully in retaliation for his complaint is baseless and is pure speculation, which cannot establish pretext as a matter of law. See Earley, 907 F.2d at 1081. Therefore, because Plaintiff has presented no evidence of pretext, Plaintiff's claims under Title VII and the FCRA fail as a matter of law. (SOF ¶110).

2. **Plaintiff's Claim Under The Whistleblower Act Fails As A Matter of Law.**

Similarly, Plaintiff's Florida Whistleblower Act claim fails as a matter of law. Florida's Whistleblower Act is an exception to the at-will employment doctrine and prevents the retaliatory discharge of an employee under certain circumstances. Specifically, the statute states:

> An employer may not take retaliatory personnel action against an employee because the employee has . . . (3) Objected to, or refused to participate in, any activity, policy, or practice of the employer which is in violation of a law, rule, or regulation.

§448.102, Fla. Stat.[12] Courts interpreting the Whistleblower Act have applied the burden shifting proof standard for retaliation cases under Title VII. See Sierminski v. Transouth Financial

---

[12] Plaintiff does not allege claims under §448.102(1) or (2), prohibiting retaliatory personnel action against someone who "(1) Disclosed, or threatened to disclose, to any appropriate governmental agency, under oath, in writing, an activity, policy, or practice of the employer that is in violation of a law, rule, or regulation" or someone who "(2) Provided information to, or testified before, any appropriate governmental agency, person, or entity conducting an investigation, hearing, or inquiry into an alleged violation of law, rule, or regulation by the employer" and the evidence in this case could not support such claims.

Corp., 216 F.3d 945, 950 (11th Cir. 2000); Padron v. BellSouth Tel., Inc., 196 F. Supp.2d 1250, 1255 (S.D. Fla. 2002), Section III.B.1., above.[13]

Plaintiff's claim fails as a matter of law because he cannot establish a *prima facie* case of retaliation in violation of the Whistleblower Act. Moreover, even assuming *arguendo* that he could establish a *prima facie* case of retaliation, which he cannot, there is insufficient evidence that Dollar General's legitimate reason for his termination was pretextual. Again, for purposes of this Motion only, Dollar General assumes Plaintiff suffered an adverse employment action because he was terminated from his employment. (SOF ¶108). As a matter of law, however, Plaintiff cannot establish that his alleged activities were protected by the Whistleblower Act or that there is a causal connection between his alleged protected activities and his termination.

    a.    **Plaintiff's Activities Were Not Protected By Section 448.102(3) Of The Whistleblower Act, And Plaintiff Cannot Establish The Requisite Causal Connection.**

Section 448.102(3) protects an employee who "**objected to, or refused to participate in,** any activity, policy or practice of the employer which **is in violation of a law rule, or regulation.**" (Emphasis added). Here, Plaintiff's actions in submitting a complaint regarding the alleged inappropriate behavior of Ms. Guion does not amount to an "activity, policy, or practice of the employer which **is in violation of a law, rule, or regulation**." §448.102(3). Assuming, *arguendo*, that Plaintiff did "object to" a practice of Dollar General within the meaning of the Whistleblower Act, his claim still fails because he has failed to establish that the alleged

---

[13] Under this analysis, the plaintiff must first establish a *prima facie* case by proving "(1) that there was a statutorily protected participation; (2) that an adverse employment action occurred; and (3) that there was a causal link between the participation and the adverse employment action." Padron, 196 F. Supp. 2d at 1255 (citations omitted). The burden then shifts to the defendant to articulate a legitimate reason for the adverse action. See Sierminski, 216 F.3d at 950, citing Olmstead v. Taco Bell, 141 F.3d 1457, 1460 (11th Cir. 1998). Finally, if the defendant proffers such a reason, "[t]he burden then shifts back to the plaintiff to prove by a preponderance of the

Orlando 71956.1

17

actions of Ms. Guion violated a law, rule, or regulation. Plaintiff seems to suggest that Ms. Guion's alleged actions during her store visits in December 2003 somehow amount to a violation of sexual harassment law. The Whistleblower Act, however, specifically defines a "law, rule, or regulation" as "any statute or ordinance or any rule or regulation adopted pursuant to any federal, state, or local statute or ordinance applicable to the employer and pertaining to the business." §448.101(4), Fla. Stat. Further, in order to state a claim under §448.102(3), Fla. Stat., the complained of activity must, **in fact**, violate a law, rule, or regulation. See White v. Purdue Pharma, Inc., 369 F. Supp. 2d 1335, 1339 (M.D. Fla. 2005). In White, the employee filed a request that the court determine her burden of proof with regard to a claim under the Whistleblower Act. The employee argued that under §448.102(3), she was not required to prove at trial that her employer actually engaged in an activity, policy, or practice that was in violation of a law, rule, or regulation but only that she objected to or refused to participate in an activity, policy or practice of the employer that she "reasonably in good faith believed was in violation of a law, rule, or regulation." White, 369 F. Supp. 2d at 1336. The employer argued that she was required to prove as part of her *prima facie* case that the activity, policy, or practice to which she objected and/or in which she refused to participate was **an actual violation** of a law, rule, or regulation. See id. In applying Florida law, the court distinguished a Title VII analysis requiring only that an employee show "that she opposed an unlawful employment practice which she reasonably believed had occurred." Id. at 1337. It concluded, based on prior Florida case law, the plain language of the statute, and the purpose of the Whistleblower Act, that a plaintiff must prove as part of the *prima facie* case that he or she "objected to or refused to participate in an

---

evidence that the 'legitimate' reason is merely a pretext for prohibited, retaliatory conduct." Sierminski, 216 F.3d at 950, citing Olmstead, 141 F.3d at 1460.

activity, policy, or practice of [the employer] which was, **in fact**, in violation of a law, rule, or regulation." Id. at 1337-1339.

Here, Plaintiff cannot prove that Ms. Guion's alleged actions, even if they occurred as reported by him or the alleged victims, come even close to actionable sexual harassment as a matter of law. See Mendoza, 195 F.3d at 1246; Speedway SuperAmerica LLC, 2005 Fla. App. LEXIS 10129 at *13-*16. Even if Plaintiff's allegations were accepted, at most, in separate less-than-45 minute meetings, Ms. Guion: (1) placed her hand on employees' shoulders on two occasions; (2) gave an employee a "grandmotherly" hug on one occasion; and (3) stated one time that another manager was "adorable." (SOF ¶49, 81). Clearly, this conduct is not actionable sexual harassment within the meaning of Florida or Eleventh Circuit law (or any laws about which Dollar General is aware). See Oncale, 523 U.S. at 81 (noting that Title VII is not a "general civility code"). See also Discussion, Section III.B.1.a., above.[14]

        **b.    Even If Plaintiff Could Establish A Prima Facie Case of Retaliation Under The Whistleblower Act, He Cannot Establish That Dollar General's Legitimate, Nonretaliatory Reasons For His Discharge Were Pretext For Retaliation.**

Even if Plaintiff could establish a *prima facie* case of retaliation, which for the reasons set forth in Section III.B.1.c. above he cannot, the evidence does not establish that Dollar General's legitimate, nonretaliatory reasons for his discharge were pretext for retaliation under the Whistleblower Act. See Discussion, Section III.B.1.c., above.

---

[14] Even assuming the standard at the *prima facie* case is that Plaintiff had a "reasonable, good faith belief" that a violation of a law, rule, or regulation occurred, which it is not, Plaintiff's claim under Florida's Whistleblower Act fails as a matter of law for the reasons set forth in Sections III.B.1. above because he cannot establish a *prima facie* violation of the Whistleblower Act. See Section III.B.1., above. Further, Plaintiff cannot establish a causal connection for the reasons discussed in Section III.B.1.b., above.

Orlando 71956.1

19

## III. CONCLUSION

For all of the foregoing reasons, summary judgment in favor of Dollar General is appropriate as to Plaintiff's claims for retaliation under Title VII, the FCRA, and Florida's Whistleblower Act.

Dated: December 19, 2005.

Respectfully submitted,

FISHER & PHILLIPS LLP
1250 Lincoln Plaza
300 South Orange Avenue
Orlando, Florida 32801
Telephone: (407) 541-0888
Facsimile: (407) 541-0887

*Anthony J. Hall*
Anthony J. Hall, Esq.
Florida Bar No.: 0040924
ahall@laborlawyers.com

Natalie J. Storch, Esq.
Florida Bar No. 0269920
nstorch@laborlawyers.com

Attorneys for Defendants
DOLLAR GENERAL CORPORATION and
DOLGENCORP, INC.

### CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on December 19, 2005, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system which will send a notice of electronic filing to the following: Brian P. Battaglia, Esquire, Battaglia, Ross, Dicus & Wein, P.A., 980 Tyrone Boulevard, Post Office Box 41100, St. Petersburg, FL 33743-1100.

*Anthony J. Hall*
Anthony J. Hall